IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Karen Foster, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. **2-05CV-526** |
| | § | |
| Bowie County, Texas, and | § | |
| Bruce Ballou, | § | U.S. District Judge *Ward* |
| | § | |
| **Defendants.** | § | U.S. Magistrate Judge _____ |

---

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

---

### INTRODUCTION

1.　Plaintiff Karen Foster, through undersigned counsel, brings this civil action against her employer, Defendant Bowie County, Texas, and Defendant Bruce Ballou (individually and in his official capacity as Chief Juvenile Probation Officer for Bowie County, Texas) (collectively, "Defendants"). As described more fully below, Defendants violated Plaintiff Karen Foster's constitutional right to free speech and unlawfully retaliated against her for making a good faith report (via an attorney) to a law enforcement agency (the Texas Juvenile Probation Commission and the Bowie County Juvenile Probation Board and its members) of a violation of law by another public employee. Specifically, Plaintiff Karen Foster reported that allegations of abuse, exploitation, and neglect of juveniles were being covered-up at the direction of Defendant Bruce Ballou, the Chief Juvenile Probation Officer for Bowie County, Texas. In retaliation, Defendant Bruce Ballou harassed, assaulted, reassigned, and demoted Plaintiff Karen Foster–a 29 year employee–from her position as Assistant Chief Juvenile Probation Officer for Bowie County, Texas.

## PARTIES

2.      Plaintiff Karen Foster is an individual and a citizen of both the State of Texas and the United States of America. She resides, and is domiciled, in Bowie County, Texas. She is a public employee and works for Defendant Bowie County, Texas and Defendant Bruce Ballou (in his official capacity as Chief Juvenile Probation Officer for Bowie County, Texas).

3.      Defendant Bowie County, Texas is a governmental entity and a citizen of both the State of Texas and the United States of America. Defendant Bowie County, Texas maintains its principal place of business at 710 James Bowie Drive, New Boston, Texas 75570, and (as its name suggests) is domiciled in Bowie County, Texas.

4.      Defendant Bruce Ballou is an individual and a citizen of both the State of Texas and the United States of America. He is currently Chief Juvenile Probation Officer for Bowie County, Texas. He is domiciled in Bowie County, Texas.

## PERSONAL JURISDICTION

5       Defendants have systemic and continuous contacts with the State of Texas—as both are domiciled in Texas. Further, Defendants have purposefully directed their activities at residents of the State of Texas and this civil action results from damages that arise out of or relate to those activities—this cases arises out of unlawful retaliation that occurred in Bowie County, Texas. Therefore, this Court has "general jurisdiction" over Defendants for all matters in which they are a party and "specific jurisdiction" over Defendants for the claims raised in this civil action. In sum, this Court has personal jurisdiction over the parties in this civil action.

## SUBJECT MATTER JURISDICTION

6.    In this civil action, Plaintiff Karen Foster is suing Defendant Bowie County,

Texas and Defendant Bruce Ballou (in his individual capacity and his official capacity as Chief

Juvenile Probation Officer) under federal law—Section 1983 of Title 42 of the United States

Code.  In addition, Plaintiff Karen Foster is suing Defendant Bowie County, Texas and

Defendant Bruce Ballou (in his official capacity as Chief Juvenile Probation Officer) under state

law—the Texas Whistleblower Act ("TWA"), TEX. GOV'T CODE §§ 554.001 to 554.010 (as

amended), and the Texas Penal Code/common law (assault).  To the extent this civil action arises

under federal law, this Court has subject matter jurisdiction pursuant to Section 1331 of Title 28

of the United States Code (federal question jurisdiction).  To the extent this civil action arises

under state law, this Court has subject matter jurisdiction pursuant to Section 1367 of Title 28 of

the United States Code (supplemental jurisdiction).

## VENUE

7.    Defendant Bowie County, Texas and Defendant Bruce Ballou reside within the

judicial district for the Eastern District of Texas.  Further, the events and omissions giving rise to

this civil action (i.e., the unlawful retaliation) occurred in the judicial district for the Eastern

District of Texas.  Therefore, under Section 1391(b) of Title 28 of the United States Code, venue

for this civil action is proper in the judicial district for the Northern District of Texas.

## BACKGROUND

### *Texas Juvenile Probation Commission*

8.    The Texas Juvenile Probation Commission (the "Commission") is a state agency

that assists counties in providing probation and juvenile detention services.

9.     The Commission provides that assistance via funding, technical assistance, training, analyzing and disseminating information, facilitating communication between state and local entities, and establishing and enforcing standards and rules.

10.     Pursuant to its rule making authority, the Commission has promulgated regulations concerning the treatment and safety of juveniles.

### *Required Reporting of Injuries, Abuse, Exploitation, and Neglect*

11.     The Commission's regulations require reporting of serious injuries, abuse, exploitation, and neglect of all juveniles referred to a juvenile probation department.

12.     Serious incidents in a juvenile justice program or juvenile probation department— those involving serious injuries requiring medical treatment—**must** be reported to the Commission **within 24 hours**.

13.     In addition, employees of juvenile probation departments **must** report to the Commission and local law enforcement **any allegation of abuse, exploitation or neglect** of a juvenile that occurs in a juvenile justice facility or involves a juvenile probation staff member.

14.     That report must also be made **within 24 hours** from the time the allegation is made.

15.     For allegations of abuse, exploitation, and neglect not occurring in a juvenile justice facility, the Commission requires the same reporting as required by the Texas Family Code.

16.     The Texas Family Code **requires** that juvenile probation officers—among other professionals—report suspected abuse or neglect **within 48 hours**.

17     The Texas Family Code makes it **a crime** for a person to fail to report suspected

abuse or neglect.

### *The Bowie County Juvenile Board*

18    The Bowie County Juvenile Board (the "Board") is one of many local boards created by statute to form a juvenile probation department, hire and employ a chief of that department, and adopt policies governing that department

19.    The Board's members are all judges in Bowie County, Texas:  Judges Ralph K. Burgess, Leon F. Pesek, Jr., James Carlow, Jeff Addison, and John F. Miller, Jr.

20.    As it does with other local boards, the Commission requires that the Board adopt written personnel policies.

21.    The Board ostensibly did so via adoption of the Bowie County Personnel Policy (the "Personnel Policy").

### *Grievance Procedure*

22.    The Personnel Policy contains a procedure for initiating a grievance and specifically provides that a grievant will not face adverse consequences for invoking that procedure:

**Dispute Resolution/Grievances**

Bowie County wishes to prevent circumstances that lead to grievances  When a dispute occurs, it is to be resolved promptly.  **Employees will not face adverse consequences for filing a grievance**.  Grievances may be filed alleging unfair treatment, discrimination, improper application of regulations and benefits of employment, and for improper working conditions.

Informal grievance is the first step in the process, attempting to resolve the problem through an informal meeting with the supervisor.  If this attempt to resolve the problem fails, a more formal grievance, in writing, should be filed. This formal grievance, signed by the employee, is presented to his/her supervisor within two weeks of the occurrence  The employee should include a statement regarding what action they are requesting be taken as a result of the grievance.

The department head or appointed manager will initiate an appropriate investigation and will take steps to resolve the grievance. All documentation should be held by the department head or appointed manager. The employee may appeal at any time during the process if dissatisfied with the resolution of the grievance. Failure to appeal will imply agreement with the resolution.

23.     Thus, although the Personnel Policy addresses how to initiate a grievance—and guarantees that employees will face no adverse consequences for doing so—it does not fully address the procedures for exhaustion of a grievance.

### The Bowie County Juvenile Probation Department and the Bowie County Academy

24.     The Bowie County Juvenile Probation Department (the "Department") operates a juvenile detention facility—the Bowie County Academy (the "Academy").

25.     The Academy is an approximately 164 bed secure facility located in Texarkana, Texas, that houses both pre-adjudication and post-adjudication programs for males and females between the ages of 10 and 17 from nearly 30 different Texas counties.

### Former Assistant Chief Juvenile Probation Officer Karen Foster

26.     For 29 years, Plaintiff Karen Foster has worked for the Bowie County Juvenile Probation Department (the "Department").

27.     Plaintiff Karen Foster started working at the Department right out of high school, worked there through college, and has been there ever since.

28.     Plaintiff Karen Foster rose through the ranks from detention officer to probation officer to probation officer trainer and court coordinator.

29.     In July 2003, Plaintiff Karen Foster became Assistant Chief Juvenile Probation

Officer—she acted in the Chief's capacity in his absence.

### Chief Juvenile Probation Officer Bruce A. Ballou

30    Defendant Bruce Ballou is an admitted methamphetamine addict—a professed recovering one.

31    Defendant Bruce Ballou was previously arrested—and received deferred adjudication—for driving while intoxicated.

32    Just over two years ago, the Board saw fit to hire Defendant Bruce Ballou to oversee the custody of children between the ages of 10 to 17 years: The Board appointed Defendant Bruce Ballou to the position of Chief Juvenile Probation Officer in Bowie County.

### Ballou's Directive to Withhold Required Reports

33.    On approximately April 11, 2005, Plaintiff Karen Foster received a phone call from a detective of the Texarkana Police Department requesting information on a child who was hurt while in custody at the Academy—the child's face had apparently been scarred, supposedly during restraint of the child.

34.    Plaintiff Karen Foster immediately placed a telephone call to Defendant Bruce Ballou and left him a voicemail message on his mobile telephone.

35.    Plaintiff Karen Foster then placed a telephone call to the Academy's Facility Administrator, who then asked Foster if he could come by Foster's office to discuss the matter: she responded, "yeah, I think you better" or words to that effect.

36.    The Academy's Facility Administrator met with Plaintiff Karen Foster and explained to her that he had drafted a written report concerning the incident involving the child but never sent the report to the Commission because Defendant Bruce Ballou told him not do so.

37.    In response, Karen Foster told the Facility Administrator that such incidents must be reported to the Commission

38.    The Facility Administrator replied that he agreed but still did not report the incident to the Commission because Defendant Bruce Ballou specifically told him not to do so

39.    The Facility Administrator then explained that this was not the only incident—he outlined a list of incidents concerning injuries to children involving allegations of excessive force and intimidation on the part of detention officers.

40.    The Facility Administrator noted that he believed all of these incidents constituted abuse, exploitation, and neglect

41.    But again, the Facility Administrator noted that the incidents were not reported to the Commission because Defendant Bruce Ballou had specifically directed him to refrain from reporting these incidents to the Commission.

42.    When Defendant Bruce Ballou returned to his office, Plaintiff Karen Foster went to his office and informed him about the telephone call she had received from the Texarkana Police Department.

43.    Defendant Bruce Ballou explained that he knew the identity of the officer the allegation involved.

44.    Plaintiff Karen Foster inquired as to why the incident was not reported to the Commission.

45.    Defendant Bruce Ballou responded that the child involved did not want the incident reported.

46.    Plaintiff Karen Foster responded she does not get to make that decision—she is a child.

### Karen Immediately Reported a Violation of the Law to the Commission

47. Plaintiff Karen Foster immediately telephoned an attorney—Amy Miller

48. On Plaintiff Karen Foster's behalf, Amy Miller contacted the Commission and spoke with an investigator named Jaime Coronado ("Coronado").

49. Coronado confirmed that, based on the information provided, the incidents should have been reported to the Commission.

50. So informed, Plaintiff Karen Foster and Amy Miller discussed reporting this directly to the Board—but Plaintiff Karen Foster believed the reporting would have to wait because the members of the Board were attending a conference of some sort in California

### Ballou Assaults Karen and Threatens More Retaliation

51. On April 12, 2005, Defendant Bruce Ballou told Plaintiff Karen Foster and his Administrative Assistant that he wanted to meet them at 4:30 p.m.

52. At or around that 4:30 p.m on April 12, 2005, Defendant Bruce Ballou brought Plaintiff Karen Foster and his Administrative Assistant into his office and said that he had been hearing things he did not like and did not like the feeling he was getting, or words to that effect

53. In that meeting, Defendant Bruce Ballou then asked Plaintiff Karen Foster and his Administrative Assistant, "do you just want me to turn in my resignation?" or words to that effect.

54. In response, Plaintiff Karen Foster said, "Bruce, I don't know what I want you to do because I really don't know what you are doing with the program right now," or words to that effect

55      Defendant Bruce Ballou's Administrative Assistant then said that she thought Defendant Bruce Ballou was going to be spending more time at the Academy instead of being gone all the time, or words to that effect (apparently, referring to the fact that a number of people had been laid off and rather than spend more time at the Academy, Defendant Bruce Ballou had been spending time at an auto shop working on his personal vehicles).

56.     Plaintiff Karen Foster inquired whether she was entitled to be informed of what things he had been hearing—to which he had referred—and from whom he was hearing these unidentified things, or words to that effect.

57.     Defendant Bruce Ballou responded by pointing his finger at Plaintiff Karen Foster and stating, "Remember, when you wouldn't tell me something?," or words to that effect.

58      Plaintiff Karen Foster inquired, "so this is payback?," or words to that effect.

59      Defendant Bruce Ballou retorted sarcastically, "well, let's just say what goes around comes around," or words to that effect.

60.     Defendant Bruce Ballou commented that Plaintiff Karen Foster and his Administrative Assistant had not been supportive of him, Plaintiff Karen Foster responded that this accusation was not true (or words to that effect—and may have used a more colorful denial).

61.     In reply, Defendant Bruce Ballou lunged over his desk at Plaintiff Karen Foster— his administrative assistant witnessed him doing so and later stated that if the desk had been any shorter he would have hit and/or choked Plaintiff Karen Foster (or words to that effect).

62.     Plaintiff Karen Foster subjectively (and reasonably) believed that Ballou was going to hurt her.

### *Karen Reported a Violation of the Law to the Board*

63.     Through attorney Amy Miller, Plaintiff Karen Foster reported the matter to Judge John F. Miller, Jr. of the Board (Amy Miller's father-in-law) while he was attending the conference in California.

64.     In response, Judge Miller did not contact Plaintiff Karen Foster directly—but promptly requested that Amy Miller gather more information from Plaintiff Karen Foster concerning the matter.

65.     Attorney Amy Miller gathered more information and promptly reported back to Judge Miller.

66.     On April 26, 2005, the Board held a closed meeting and may have discussed this matter at that meeting.

### *Ballou Retaliates:   He Tries to Fire Karen*

67.     The next Board meeting was scheduled for May 17, 2005.

68.     Defendant Bruce Ballou sent Plaintiff Karen Foster to a conference on that date that he was supposed to attend, so she would be out of town and unable to attend the Board meeting scheduled for May 17, 2005.

69.     Up to that point, this was the only open meeting of the Board that Plaintiff Karen Foster could not attend since Defendant Bruce Ballou became Chief Juvenile Probation Officer in Bowie County, Texas and she was Assistant Chief Juvenile Probation Officer.

70.     After Plaintiff Karen Foster left to attend that conference, Defendant Bruce Ballou changed the Notice of Meeting that had previously been posted to include on the Board's agenda an "Executive Session."

71. This action violated Texas law concerning the posting of notice of such meetings, as Texas law requires 72 hours notice via posting in a place readily accessible to the general public in the county courthouse.

72. Upon information and belief, Defendant Bruce Ballou met with the Board on May 17, 2005, to ask for permission to fire Plaintiff Karen Foster.

73. Ostensibly based on Plaintiff Karen Foster's outstanding and long-term tenure as an employee, the Board apparently would not grant permission to fire: but apparently did grant Defendant Bruce Ballou permission to demote her while he tried to build a better case against her.

### *Ballou Retaliates:  He Demotes and Reassigns Karen*

74. By letter dated May 23, 2005, Defendant Bruce Ballou removed Plaintiff Karen Foster as Assistant Chief.

75. A true and correct copy of the letter Defendant Bruce Ballou signed and gave to Plaintiff Karen Foster on May 23, 2005, is attached hereto as Exhibit "1."

76. Defendant Bruce Ballou took away Plaintiff Karen Foster's supervisory duties, removed her from the Academy, required that she report to an office approximately 23 miles away (in New Boston, Texas), and had her handle parole duties for the Texas Youth Commission, such as managing a case load.

77. In his letter of May 23, 2005, Defendant Ballou did not give an exhaustive or definitive list of alleged infractions constituting the proffered reasons for the demotion and reassignment.

78. Instead, in an obvious attempt to keep his options open, Defendant Bruce Ballou

simply asserted that Plaintiff Karen Foster had been "insubordinate" (without explanation) and "engaged in behavior that is unethical in nature" (without citation to any particular ethical rule allegedly breached)

79     In his letter of May 23, 2005, Defendant Bruce Ballou generally accused Plaintiff Karen Foster of having engaged in "unprofessional practices and conduct" that is "detrimental to the department"–but he did not provide any specifics.

80     Defendant Bruce Ballou only cited three "examples" of how he alleged that Defendant Karen Foster had engaged in "unethical" or "unprofessional" conduct:   (1) she allegedly attempted to encourage an employee to seek employment elsewhere; (2) she allegedly had "very little communication" with him during the month of May; and (3) she allegedly gave "too little information" and "no opportunity for discussion" on staffing.

81.    Defendant Bruce Ballou did not name names, dates, or witnesses for any of these three allegations

82.    After receiving the letter, Plaintiff Karen Foster immediately preserved her grievance rights:  she noted her disagreement with the action in writing and her intention to send a follow-up response, also in writing.

83.    Meanwhile, Defendant Bruce Ballou continued to harass Plaintiff Karen Foster in the unimaginative and typical manner—by trying to build a case against her.

84     Defendant Bruce Ballou began giving Plaintiff Karen Foster verbal counseling over relatively trivial matters.

85     Upon information and belief, Defendant Bruce Ballou began bragging to others, some under Plaintiff Karen Foster's supervision, that he was going to force Foster to either quit or retire.

86.    Defendant Bruce Ballou even checked with the Bowie County Payroll Department to see if Plaintiff Karen Foster was eligible to retire.

### *Karen Files a Timely Written Grievance in Accordance with the Personnel Policy*

87.    By letter dated June 6, 2005, Plaintiff Karen Foster filed a response to—and grievance concerning—the demotion in accordance with the Personnel Policy.

88.    In accordance with the Personnel Policy, Plaintiff Karen Foster wanted to resolve the matter via informal meeting with Defendant Bruce Ballou—but having been assaulted in her previous meeting, she was understandably afraid to meet with him alone.

89.    When that was unsuccessful, Plaintiff Karen Foster delivered a written grievance letter within two weeks of her demotion, in accordance with the Personnel Policy.

90.    The tone of the written grievance letter was both cordial and polite.

91.    The letter was also clear—she complained that her demotion and reassignment were motivated by retaliation for her having reported a violation of law: "I respectfully believe that I was demoted and retaliated against for speaking out about wrongdoing and for improper conduct involving how care and supervision are provided in the Bowie County Academy."

92.    In that letter, Plaintiff Karen Foster explained the basis for her grievance by addressing the three "examples" cited in Defendant Bruce Ballou's letter.

93.    First, Plaintiff Karen Foster explained that she had not encouraged another employee to seek employment elsewhere:   Instead, in response to an employee's complaint concerning her low income and high air conditioning expenses, she informed the employee about an opportunity to work on-call for a Mental Health and Mental Retardation office after hours.

94    Second, Plaintiff Karen Foster explained that she changed the form of her

communications to written ones (1) in response to Defendant Bruce Ballou's general directive that the Board wanted his communications to be "very professional" and (2) in response to Ballou's own new-found affinity for written communication—she was only responding in kind: Still, she continued to communicate orally as well and did so regularly.

95. In addition, after Defendant Bruce Ballou assaulted her in his office, Plaintiff Karen Foster was understandably reluctant to stop by Ballou's office unaccompanied and this had an understandable impact on communications between Foster and Ballou.

96. Third, as for the staffing issue, Plaintiff Karen Foster was unaware that Defendant Bruce Ballou expected any more information, as he had not said that he needed any other information or specified what additional information he wanted.

### The Board Fails to Take Action on the Grievance

97. The Board issued a Notice of Meeting, which contained an agenda for the meeting it was to hold June 21, 2005.

98. On that agenda was listed a hearing on Plaintiff Karen Foster's grievance.

99. On the morning of June 21, 2005, Defendant Bruce Ballou told Plaintiff Karen Foster that the meeting was cancelled and her grievance would not be heard that night.

### The Commission Initiates an Investigation

100. Upon information and belief, the June 21, 2005 meeting was cancelled because the Commission had notified Defendant Bruce Ballou and the Facility Administrator that the Commssion would be initiating an investigation at the Academy and of Ballou for possible incidents of exploitation, abuse, and neglect of children at the Academy.

101. The Commission performed a physical inspection at the Academy on June 28,

2005, and apparently within the first few hours of its investigation in Bowie County, the Commission found enough information to justify an immediate suspension of Defendant Bruce Ballou

102     Defendant Bruce Ballou was suspended with pay and full benefits

103.    The Commission apparently ordered the appointment of an Interim Chief Juvenile Probation Officer.

### *The Board Disregards the Personnel Policy in Selecting an Interim Chief*

104.    On July 1, 2005, the Board held an emergency meeting and subsequently, published the minutes of that meeting.

105     The minutes of the July 1, 2005, Board meeting reflect that the Board members discussed in detail the issue of who should receive immediate appointment into the position of Interim Chief Juvenile Probation Officer

106.    The two officers being considered for the appointment were Plaintiff Karen Foster (who had previously served as Interim Chief) and Harold Harlston ("Harlston")—an officer who had previously been considered and rejected for the position as Chief, as "there was a question about his leadership ability."

107     Despite the questions about Harlston's leadership ability, and the fact that Plaintiff Karen Foster had previously served as Interim Chief, the Board appointed Harlston.

108     The **only** reason the Board members expressed for not appointing Plaintiff Karen Foster as Interim Chief Juvenile Probation Officer was that she had filed a grievance.

109.    As the minutes of the July 1, 2005, Board meeting clearly state:   "Miller recommended Karen Foster as interim chief **with the stipulation she withdraw her grievance**."

"Judge Burgess expressed his concern about whether appointing Karen would look like we were going around the grievance."

110. Thus, the **only** and **decisive** reason Plaintiff Karen Foster was not appointed is because she had filed a grievance.

111. The non-selection of Plaintiff Karen Foster for the position of Interim Chief is in direct violation and disregard of the Personnel Policy's clear and unmistakable guarantee that "**Employees will not face adverse consequences for filing a grievance.**"–Plaintiff Karen Foster faced just such an adverse consequence: she was denied the position of Interim Chief because she had filed a grievance.

### The Commission Investigation Continues

112. Upon information and belief, the Commission is still conducting its investigation.

113. Upon information and belief, the investigation concerns whether Defendant Bruce Ballou's certification as a probation officer should be revoked.

114. Also upon information and belief, there is now a pending investigation into whether criminal charges will be brought concerning the matter.

### The Board Continues to Avoid Hearing the Grievance—But Quickly Reinstates Ballou

115. On July 26, 2005, the Board held a meeting.

116. The Notice of Meeting that was apparently posted did not list Plaintiff Karen Foster's grievance on its agenda.

117. The minutes of the July 26, 2005, Board meeting reflect that—although the Board did not address Plaintiff Karen Foster's grievance—the Board met with Defendant Bruce Ballou and his attorney in "executive session."

118. When that meeting returned to an open session, the Board heard from people that Defendant Bruce Ballou and his attorney apparently brought to show support for Ballou.

119. In its open session, the Board did not hear from anyone concerning the specific matters into which the Commission was investigating (although it may have heard about those matters in its "executive session").

120. The Board did not hear from anyone concerning whether Defendant Bruce Ballou had ordered personnel to refrain from filing reports of serious juvenile abuse to the Commission (although it may have heard about those matters in its "executive session").

121. The Board did not hear from anyone concerning whether children were being abused, exploited or neglected, while Defendant Bruce Ballou held the position of Chief Juvenile Probation Officer (although it may have heard about those matters in its "executive session")

122. Instead, the Board heard very general remarks concerning Defendant Bruce Ballou's character.

123. The people commenting on Defendant Bruce Ballou's character stated that they had only known Ballou for a very short amount of time—two years, fifteen months, one year, and eight months, respectively.

124. The comments themselves were very generic: "he has made mistakes but has developed good programs" and he "has an outstanding work ethic" and had "compassion for the kids."

125. One of the persons giving Defendant Bruce Ballou an endorsement was someone Ballou had hired: Jace Hockaday ("Hockaday")—a former detention officer who was alleged to have been involved in one of the previously-unreported injuries to a child

126. Hockaday's background check, which is performed on all new hires, apparently

revealed an arrest occurring within a time frame that would make him ineligible to serve as an officer under the rules established by the Commission

127. Defendant Bruce Ballou knew of the arrest and hired Hockaday anyway, stating that "he would take care of it" or words to that effect.

128 When his background came to the Commission's attention via its investigation, Hockaday's certification was revoked and he was fired.

129 Following this open session on July 26, 2005, Defendant Bruce Ballou and his attorney were invited back for a private meeting with the Board while it was in its "executive session."

130 Following this second invitation-only "executive session," the Board returned to an open meeting and, on motion of Judge Leon Pesek, Jr , reinstated Defendant Bruce Ballou as Chief Juvenile Probation Officer.

### The Board Sets the Grievance for Hearing—then Cancels the Hearing

131. On August 16, 2005, the Board was to hold a meeting.

132. On the Notice of Hearing apparently posted for that meeting, the agenda included an "employee grievance"—ostensibly, Plaintiff Karen Foster's grievance.

133. Defendant Bruce Ballou did not notify Plaintiff Karen Foster that her grievance was on the agenda for that hearing.

134. On the morning of August 16, 2005, Defendant Bruce Ballou's administrative assistant informed Plaintiff Karen Foster that the meeting was cancelled and was rescheduled for August 30, 2005

### *The Board Again Sets the Grievance for Hearing—then Cancels the Hearing*

135    On August 30, 2005, the Board held a meeting.

136.    When Plaintiff Karen Foster arrived for that hearing, the front doors of the Bowie County Courthouse, where the meeting was to be held, were locked and the interior lights were off on the first floor.

137    Plaintiff Karen Foster found someone at a back entrance to let her in the building.

138.    When she appeared for the meeting, Defendant Bruce Ballou was in attendance as were two members of the Board:  Judges Pesek and Addison.

139.    Judge Miller arrived later and stated that the front doors were locked and there were people outside who may have wanted to attend but were walking away.

140    Judge Miller stated that Judge Burgess wanted to attend the hearing but was holding court and Judge Carlow could not be reached.

141.    Plaintiff Karen Foster was informed that the hearing would be cancelled and rescheduled.

142    The Board asked Plaintiff Karen Foster to "check her calendar," or words to that effect, and that the Board would coordinate the calendars of its members and reschedule the hearing for a date to be determined later.

### *The Board Hires an Assistant Chief Juvenile Probation Officer*

143.    Before the Board had heard Plaintiff Karen Foster's grievance concerning her demotion from the position of Assistant Chief Juvenile Probation Officer—indeed, before the Board even reset the grievance for hearing—Jed Jutte ("Jutte") from Palo Pinto County, Texas, was hired to be the new Assistant Chief Juvenile Probation Officer.

144    Upon information and belief, Jute was offered the position of Assistant Chief Juvenile Probation Officer—or encouraged to accept that position—several weeks before his official hire date of October 3, 2005.

145.    Palo Pinto County, Texas, was apparently advertising to fill Jutte's position in Palo Pinto County, Texas, as early as September 9, 2005.

### The Board Finally Hears the Grievance

146.    On October 18, 2005, the Board held a meeting on Plaintiff Karen Foster's grievance.

147.    At that meeting, Defendant Bruce Ballou was unable to justify the reasons he gave for demoting and reassigning Plaintiff Karen Foster.

148.    At that meeting, Defendant Bruce Ballou admitted—by way of apology—that in his meeting with Plaintiff Karen Foster and his administrative assistant he became "angry" and spoke "forcefully" and that his behavior was "unprofessional and inappropriate."

149.    At that meeting, Defendant Bruce Ballou admitted that since his reinstatement, he had conducted what appears to be a witch-hunt—he conducted some "audit" ostensibly directed toward digging-up some dirt on Plaintiff Karen Foster to cover as a "legitimate" reason for demotion and reassignment.

150.    At that meeting, Defendant Bruce Ballou let it be known that he cannot continue working with Plaintiff Karen Foster.

151.    At that meeting, the Board expressed more concern about the possibility of liability in subsequent litigation than with reaching a determination on the merits of Plaintiff Karen Foster's grievance.

### The Board Postpones a Decision on the Grievance

152. At the conclusion of the October 18, 2005 meeting, the Board determined that it would not decide Plaintiff Karen Foster's grievance at that meeting.

153. At least one member of the Board, Judge Pesek, expressed concern that the Board could not meet in private following that meeting because the Notice of Meeting had not been posted in such a way that the applicable open meetings laws would permit a private meeting at that time.

154. Judge Pesek noted that the Board had some serious legal issues to consider and needed advice of counsel in a private meeting.

155. So, the Board postponed a decision and decided that it would meet again the following week to make a decision on Plaintiff Karen Foster's grievance.

### The Board Again Postpones a Decision on the Grievance

156. At the conclusion of the October 18, 2005 meeting, the Board scheduled another meeting for October 24, 2005.

157. The Notice of Meeting that was apparently posted did not mention Plaintiff Karen Foster's grievance at all—instead, it noted that the Board would be meeting in "executive session" to consult with an attorney regarding litigation or a settlement offer.

158. At the conclusion of the meeting, the Board again failed to make a decision on Plaintiff Karen Foster's grievance, citing some unspecified "new information" to consider.

### Plaintiff Karen Foster Terminates the Grievance Procedure—Enough is Enough

159. Plaintiff Karen Foster endured retaliation for having reported a violation of law.

160. Plaintiff Karen Foster endured retaliation for having filed a grievance concerning

that retaliation

161.    Plaintiff Karen Foster endured having the position from which she was demoted filled **while her grievance over that very demotion was still pending**.

162.    Plaintiff Karen Foster endured approximately 5 months of delay on her grievance, while Defendant Bruce Ballou received a much quicker determination concerning his own suspension.

163     Having attempted for months to have her grievance determined, and with no definitive date set for an ultimate determination of that grievance, Plaintiff Karen Foster finally terminated her grievance and now seeks relief in this Court.

## PROCEDURAL STATEMENT

164     Plaintiff Karen Foster properly initiated a grievance in accordance with the requirements of Section 554.006(a) of the Texas Government Code.

165.    Plaintiff Karen Foster's invoked the applicable grievance or appeal procedures not later than the 90th day after the date on which she was demoted and reassigned

166     Plaintiff Karen Foster's invocation of the applicable grievance or appeal procedures was timely in accordance with Section 554.006(b) of the Texas Government Code

167.    A final decision on Plaintiff Karen Foster's grievance was not rendered before the 61st day after Foster initiated grievance procedures in accordance with Section 554.005 of the Texas Government Code.

168.    Plaintiff Karen Foster has filed this civil action within the applicable limitations period of Section 554.005 of the Texas Government Code.

## FIRST CLAIM FOR RELIEF (Civil Action for Deprivation of Right to Free Speech)

169.   Plaintiff Karen Foster engaged in speech concerning a matter of public concern. Her interest in doing so outweighs Defendants' interest in promoting efficiency. Still, Plaintiff Karen Foster suffered several adverse employment actions—a hostile work environment, a demotion, and a reassignment of duties. It was Plaintiff Karen Foster's speech that motivated Defendants' imposition of these adverse employment actions. Thus, Defendants Bowie County, Texas, and Defendant Bruce Ballou (in his individual capacity and his official capacity as Chief Juvenile Probation Officer), while acting under color of state law, deprived Plaintiff Karen Foster of her right to free speech—as guaranteed by the First Amendment to the United States Constitution—in violation of Section 1983 of Title 42 of the United States Code.

170.   In consideration of the law clearly established at the time they occurred, these deprivations and violations were objectively unreasonable. Therefore, Defendant Bruce Ballou may be held liable under Section 1983 in his individual capacity and is not entitled to qualified immunity from liability in this civil action. Furthermore, Defendant Bruce Ballou (in his individual capacity) displayed reckless and callous indifference to Plaintiff Karen Foster's federally protected rights.

171.   Defendant Bowie County, Texas, is liable under Section 1983 because it officially adopted and promulgated the decision to inflict the aforementioned adverse employment actions. Defendant Bowie County, Texas, is also liable under Section 1983 because this decision was made by an official with whom Defendant Bowie County, Texas, had delegated policy-making authority—Defendant Bruce Ballou. Therefore, Defendant Bowie County, Texas, is liable under Section 1983 for the violation of Plaintiff Karen Foster's right to free speech—as guaranteed by the First Amendment to the United States Constitution.

## SECOND CLAIM FOR RELIEF (Whistleblower Claim)

172    Plaintiff Karen Foster is a "public employee" within the meaning of Section 554.001(4) of the Texas Government Code. Defendant Bowie County, Texas, and Defendant Bruce Ballou (in his official capacity as Chief Juvenile Probation Officer) are "local government entities" within the meaning of Section 554.001(2) of the Texas Government Code. In being harassed, demoted, and reassigned duties, Plaintiff Karen Foster suffered adverse personnel actions within the meanings of Sections 554.001(3) and 554.002(a) of the Texas Government Code. Defendant Bowie County, Texas, and Defendant Bruce Ballou took these adverse employment actions against Plaintiff Karen Foster in retaliation for her having made a good faith report of a violation of law, by one or more other public employees, to an appropriate law enforcement authority. In doing so, Defendant Bowie County, Texas, and Defendant Bruce Ballou (in his official capacity as Chief Juvenile Probation Officer) unlawfully retaliated against Plaintiff Karen Foster, in violation of Section 554.002 of the Texas Government Code, and did so with malice.

## THIRD CLAIM FOR RELIEF (Assault)

173    Defendant Bruce Ballou assaulted Plaintiff Karen Foster in violation of Section 22.01(a)(2) of the Texas Penal Code and the common law. Defendant Bowie County, Texas, is liable for the assault Defendant Bruce Ballou committed because (1) Defendant Bruce Ballou was acting in the course and scope of his employment at the time of the assault (respondeat superior liability) and (2) Defendant Bowie County, Texas, ratified Defendant Bruce Ballou's conduct.

## JURY DEMAND

174.    In accordance with Federal Rule of Civil Procedure 38, Plaintiff Karen Foster demands a trial by jury of all issues raised in this civil action that are triable of right (or choice) by a jury.

## DEMAND FOR JUDGMENT

175.    In accordance with Federal Rule of Civil Procedure 8(a), Plaintiff Karen Foster makes the following demand that judgment be issued in her favor on all her claims and respectfully requests that this Court:

A.    Issue a declaratory judgment that Defendant Bowie County, Texas, and Defendant Bruce Ballou (in his individual capacity and official capacity as Chief Juvenile Probation Officer) unlawfully deprived Plaintiff Karen Foster of her right to free speech—as guaranteed by the First Amendment to the United States Constitution—in violation of Section 1983 of Title 42 of the United States Code (declaratory relief);

B.    Issue a declaratory judgment that Defendant Bowie County, Texas, and Defendant Bruce Ballou (in his official capacity as Chief Juvenile Probation Officer) unlawfully retaliated against Plaintiff Karen Foster in violation of Section 554.002 of the Texas Government Code (declaratory relief);

C.    Preliminarily and Permanently enjoin Defendant Bowie County, Texas, and Defendant Bruce Ballou (in his individual capacity and official capacity as Chief Juvenile Probation Officer), their agents, and those acting in concert with them, from engaging in any retaliation against Plaintiff Karen Foster for exercising her right to free speech, as guaranteed by the First Amendment to the United States Constitution, for reporting violations of law, and for

filing this civil action (injunctive relief);

   D. Issue a monetary judgment in an amount equal to the difference between the wages and benefits Plaintiff Karen Foster actually received and the wages and benefits she would have received but for Defendants' illegal acts (back pay);

   E. In lieu of reinstatement, issue a monetary judgment in an amount sufficient to reimburse Plaintiff Karen Foster for losses she is likely to suffer in the form of future pay and benefits and loss of seniority (front pay);

   F. Issue a monetary judgment in an amount sufficient to compensate Plaintiff Karen Foster for all other damages she has suffered as a result of Defendants' violations of law as described herein (compensatory and actual damages);

   G. Issue a monetary judgment in an amount sufficient to punish Defendant Bruce Ballou (in his individual capacity) for violating Plaintiff Karen Foster's constitutional right to free speech, as guaranteed by the First Amendment to the United States Constitution, and to deter him from engaging in such action in the future (punitive damages);

   H. Issue a monetary judgment in an amount sufficient to punish Defendant Bowie County, Texas, and Defendant Bruce Ballou (in his official capacity as Chief Juvenile Probation Officer) and deter them and other counties and officials from retaliating against public employees for reporting violations of law (exemplary damages);

   I. To the extent not otherwise requested herein, issue a judgment granting Plaintiff Karen Foster all damages and relief of any kind whatsoever made available to her, including (without limitation) those described in Section 554.003 of the Texas Government Code;

   J. To the greatest extent allowed by law, issue a monetary judgment granting

Plaintiff Karen Foster pre-judgment and post-judgment interest on all amounts to which she is entitled.

K.   Award Plaintiff Karen Foster attorneys' fees and costs;

L.   To the extent not otherwise requested herein, issue a monetary judgment in favor of Plaintiff Karen Foster for all back pay, front pay (in lieu of reinstatement), compensatory damages, punitive damages, exemplary damages, pre-judgment interest, post-judgment interest, attorneys' fees, and costs, to which she is entitled; and

M    Award Plaintiff Karen Foster such additional relief as this Court deems proper and just and to which she is entitled.

Respectfully submitted,

David L. Wiley
Lead Attorney
Texas State Bar No. 24029901

Amy E. Gibson
Texas State Bar No. 00793801

Ray, Cho, Wiley,
Van Brauman & Gibson, P.L.L.C.
3102 Maple Avenue, Suite 240
Dallas, Texas 75201-1353
Telephone: (214) 522-2121
Facsimile: (214) 522-2126
E-Mail Addresses:
dwiley@rcwlawyers.com
agibson@rcwlawyers.com

ATTORNEYS FOR
PLAINTIFF KAREN FOSTER